# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| MICHELLE L. BLAND, | ) |
| Plaintiff, | ) ) ) |
| v. | )   Case No. 2:18-CV-95 NAB ) |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Michelle L. Bland's (Bland) appeal regarding the denial of supplemental security income under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 9.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse and remand the Commissioner's decision.

**I.   Background**

On December 17, 2015, Bland filed an application for supplemental security income, alleging disability beginning November 9, 2015. (Tr. 155-60.) The Social Security Administration ("SSA") denied Bland's claim on April 12, 2016, and she filed a timely request

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security. Andrew M. Saul became the Commissioner of Social Security on June 4, 2019. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

for a hearing before an administrative law judge ("ALJ") on May 11, 2016.  (Tr. 79-83, 88-90.) The SSA granted Bland's request for review, and an administrative hearing was held on January 9, 2018 in Hannibal, MO.  (Tr. 32-62, 91-104.)  Bland, represented by attorney Viki Dempsey, testified at the hearing.  (Tr. 36-46.)  Vocational expert ("VE"), Bob Hammond (Hammond), also testified at the hearing.  (Tr. 56-61.)

On April 3, 2018, the ALJ found Bland not disabled as defined within the Social Security Act.  (Tr. 13-27.)  Bland requested review of the ALJ's decision from the Appeals Council.  (Tr. 8.)  On September 6, 2018, the Appeals Counsel of the SSA denied Bland's request for review. (Tr. 1-3.)  The decision of the ALJ thus stands as the final decision of the Commissioner.  *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).  Bland filed this appeal on October 24, 2018.  [Doc. 1.] The Commissioner filed an Answer and the certified Administrative Transcript on February 1, 2019.  [Doc. 14, 15].  Bland filed a Brief in Support of the Complaint on April 5, 2019.  [Doc. 20.]  The Commissioner filed a Brief in Support of the Answer on July 2, 2019.  [Doc. 25.]

**II.     Issues for Review**

Bland presents two issues for review.  First, she asserts that the ALJ improperly weighed the medical opinion of her nurse practitioner.  Second, she asserts that the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence.  The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

**III.    Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court

determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006).  The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently.  *Id.*  If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed.  *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).

The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole.  *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).  "In this substantial-evidence determination, the entire administrative record is considered but the evidence is not reweighed."  *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012).

**IV.    ALJ's Decision**

The ALJ found that Bland had not engaged in substantial gainful activity since December 9, 2015.  (Tr. 15.)  She determined that Bland had the severe impairments of bipolar disorder, depression, anxiety/panic disorder with agoraphobia, obsessive-compulsive disorder ("OCD"), and post-traumatic stress disorder ("PTSD").  (Tr. 15.)  She determined that Bland did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part, 404, Subpart P, Appendix 1.  (Tr. 16.)  The ALJ found that Bland had the residual functional capacity to perform the full range of work at all exertional levels but with the following nonexertional limitations:  (1) avoid hazardous work environments, (2) limited to remembering and carrying out simple, routine tasks and making simple work-

related decisions, (3) cannot perform production pace tasks that require strict hourly goals, (4) occasional contact with supervisor, (5) brief and incidental contact with co-workers, (6) no contact with the general public, and (7) off-task ten percent of the workday. (Tr. 18.) Based on the RFC, the ALJ found that Bland was capable of performing her past relevant work as a cleaner and other jobs in the national economy, including laundry worker and cleaner. (Tr. 27.) Therefore, the ALJ determined that Bland was not under a disability as defined in the Social Security Act, since December 9, 2015.

## V.     Administrative Record

The administrative record consists of Bland's medical treatment records and the administrative hearing testimony.

### A.     Medical History

Bland's medical history includes treatment records from Carol Greening (Greening), records from Mark Twain Behavioral Health, a consultative examination report by Dr. Thomas J. Spencer, and a disability determination report by state agency psychological consultant Dr. J. Edd Bucklew.

#### 1. Carol Greening

Bland received treatment from Carol Greening, an Advanced Practice Registered Nurse (APRN), between March 2015 and November 2017. (Tr. 276-306, 347-51, 359-61, 400-23, 463-92.) Greening diagnosed Bland with bipolar II disorder, panic disorder, agoraphobia, post-traumatic stress disorder, and obsessive compulsive disorder. During the visits described in the earliest parts of the treatment record in 2015 and 2016, Bland consistently reported a depressed or anxious mood and panic attacks. She noted that she struggled with being in public or around a lot of people. (Tr. 276-306, 347-51.) In November 2015, Bland reported quitting her job due to

anxiety. As her treatment progressed in 2016 and 2017, she reported decreased anxiety, depression, panic attacks, and obsessive compulsive thinking. (Tr. 400-423, 463-92.) She denied any side effects of her medication during the latter part of her treatment. (Tr. 412-23, 468-92.) She continued to report that she rarely left her house and was not in public very often. (Tr. 412-23, 468-92.).

Greening's treatment notes indicated that Bland's mental status examinations were primarily within normal limits, except for a regularly documented depressed or anxious mood. Her thought process and content were logical and within normal limits. Her cognition, insight, and judgment were also normal. She consistently denied thoughts of homicide or suicide. Greening adjusted Bland's medication primarily during the time period she was experiencing more significant depression and anxiety. (Tr. 295, 300, 305, 351.)

On May 1, 2017, Greening completed a medical source statement for Bland. Greening indicated that Bland's ability to understand, remember, and carry out instructions was affected by her impairments. (Tr. 359.) Greening noted Bland had mild limitations in the ability to understand, remember, and carry out simple instructions and moderate ability to make judgments on simple work related decisions. (Tr. 359.) Greening indicated that Bland had extreme limitations in understanding, remembering, and carrying out complex instructions, and the ability to make judgments on complex work-related decisions. (Tr. 359.) In support of her indications, Greening wrote that Bland had high anxiety and had to be retrained multiple times in her last job. Greening wrote that Bland reported feeling "like she was losing her mind." (Tr. 359.) Bland also reported low energy and motivation and that 'just thinking about it [working] makes me cry." Bland reported to Greening that she struggled with being in public and had to leave and she worries how others see her. (Tr. 360.) Greening also opined that PTSD from Bland's son

6

and brother dying is shown in flashbacks and nightmares. (Tr. 360.) Greening noted that Bland had difficulty with chronic insomnia. (Tr. 360.) Greening further opined that Bland would have good days and bad days and her impairments would cause her to be absent from work about four days per month and to be off task 25% or more. (Tr. 360.) Finally, Greening noted that Bland would need to take unscheduled breaks lasting in duration from 30 minutes to an hour due to panic attacks, anxiety, and crying spells. (Tr. 361.)

### 2. Consultative Examiner Thomas J. Spencer, Psy.D.

On April 5, 2016, Dr. Thomas J. Spencer, a state agency psychologist, performed a psychological consultative examination for Bland. (Tr. 353-356.) Dr. Spencer reviewed Greening treatment records, Bland's Social Security Administration Function Report and Supplemental Questionnaire completed by Bland, in addition to a clinical interview. (Tr. 353.) In the mental status examination, Dr. Spencer noted that Bland had no impairment in grooming or hygiene. (Tr. 355.) Her eye contact was fair. (Tr. 355.) She exhibited soft speech. (Tr. 355.) Dr. Spencer noted that her insight, flow of thought, and judgment appeared to be intact. (Tr. 355.) She appeared as anxious and dysphoric. (Tr. 355.) She denied thoughts of homicide and suicide. Bland appeared alert and oriented to time, place, person, and event. (Tr. 355.) Dr. Spencer did not observe her responding to internal stimuli and she did not present as paranoid or grandiose. (Tr. 355.) Dr. Spencer opined Bland to be of low average to average intelligence. (Tr. 355.) Dr. Spencer diagnosed Bland with bipolar disorder and panic disorder with agoraphobia. (Tr. 355.) Bland reported that she resigned from her last two jobs because she became overwhelmed. (Tr. 355.)

Based on his evaluation, Dr. Spencer opined that Bland appeared capable of understanding and remembering simple instructions and capable of engaging in and persisting

7

with simple tasks. (Tr. 356.) He noted that she demonstrated marked impairment with her ability to interact socially and adapt to the environment. (Tr. 356.)

### 3. Agency Psychological Consultant J. Edd Bucklew, Ph.D.

On April 11, 2016, Dr. J. Edd Bucklew, a psychologist, prepared a psychiatric review technique regarding Bland based on her medical records. Dr. Bucklew opined that Bland exhibited moderate restriction of activities of daily living, marked difficulties in maintaining social function, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 68.) Dr. Bucklew opined that Bland was not able to adapt to changes or to even tolerate even limited social interaction. (Tr. 70.) He further opined that she was moderately limited in her ability to understand, remember, and carry out detailed instructions. (Tr. 71.) Dr. Bucklew indicated that Bland was moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance, and complete a normal workday or workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. He opined that Bland is moderately limited in the ability to interact appropriately with the general public, maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. (Tr. 72.)

Dr. Bucklew noted that she would be markedly limited in the ability to maintain attention and concentration for extended period of time and work in coordination with or in proximity to others without being distracted by them. (Tr. 71.) Dr. Bucklew also opined that Bland was markedly limited in her ability to interact with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 71-72.)

8

### 4. Mark Twain Behavioral Health

Bland received mental health support services from Mark Twain Behavioral Health for a period of time in 2016. (Tr. 364-398.) There are limited records from Bland's treatment there. She received in-home direct care from a community support specialist, Alexis Welch. The primary focus was to assist Bland in coping strategies for the anxiety she developed during her time in public places.

### B. Hearing Testimony

The ALJ conducted a hearing on January 9, 2018, and heard testimony from Bland and vocational expert Bob Hammond. (Tr. 32-62.)

### 1. Bland's Testimony

Bland testified that she was 41 years old at the time of the hearing. (Tr. 44.) Bland was in tears during her testimony. (Tr. 56.) Bland did not complete high school. (Tr. 36.) Bland last worked in 2015. (Tr. 37.) She worked at Brian Friendswood Management, an amusement and water park, where her duties initially included housekeeping before she was switched over to cooking and running the cash register at the restaurant. (Tr. 37-38.) She stated that when she cleaned the cabins, she was overwhelmed very easily and too anxious even when she was by herself. (Tr. 45-46.) Then, Bland worked at C&R Grocery Store, but she quit because she would become too overwhelmed when dealing with customers. (Tr. 45.) She cried while trying to wait on them. (Tr. 45.) Bland worked full-time at Bristol Care in 2014, a residential care facility. (Tr. 39.) In that position, she passed medication and cooked for the residents. (Tr. 39). She testified that she quit, because it would "just become too much to know who got what." (Tr. 46.) She also stated she did not remember how the job ended, because she had been off for kidney stones. (Tr. 46.) She was told at a later date that she was on the "do not rehire" list. (Tr. 46.)

Bland lived with her 12 year old daughter. (Tr. 44.) Her mother lives close to her and takes her to the grocery store. (Tr. 44.) She usually only goes grocery shopping once a month with her mother and goes to Aldi because Walmart has too many people. (Tr. 45.) She quit driving because of her anxiety in 2015. (Tr. 43, 55.)

She received counseling through Clarity. She then decided that she would receive better care at Mark Twain, but she didn't believe she received better treatment. (Tr. 42.) Therefore, she returned to her counselor at Clarity. (Tr. 42.)

Bland testified that the only side effect from her medication was "getting sleepy" at times. (Tr. 43.) Bland also testified that she experiences panic attacks a couple times a week, which range from 20 to 30 minutes. (Tr. 47.) She stated that the panic attacks do not have a trigger and "come on out of anywhere." (Tr. 47.) She described the symptoms as a tight chest, dizziness, and an inability to breathe. (Tr. 47.) Bland stated that she had anxiety and was "on edge all the time." (Tr. 48.) She has only been able to watch 45 minutes of one of her daughter's softball games, because she got too nervous and anxious. (Tr. 49.) She is unable to attend parent teacher conferences or any other school activities during the school year. (Tr. 49.) She does not leave the house other than going to the doctor and getting groceries. (Tr. 50.) Bland testified that she does not want to be around people in general. (Tr. 50.)

When speaking about her OCD, Bland testified that she compulsively checked light switches, locks on doors, and the knobs on the stove multiple times throughout the day. (Tr. 51-52.) In addition, Bland testified that she compulsively picks the skin on her arms, face, and back daily, which causes sores. (Tr. 52.) She experienced difficulty falling asleep and would wake up due to anxiety, which afterwards took about 45 minutes to an hour to return to sleep. (Tr. 54.) She is tired during the day, which results in her taking a nap each day for about an hour. (Tr.

55.) Bland acknowledged that she has also been depressed after pregnancy and the deaths of her child, friend, and brother. (Tr. 50-51.)

### 2. Vocational Expert Testimony

Bob Hammond, a vocational expert, testified regarding Bland's vocational abilities and work history. (Tr. 58.) The VE stated that Bland's past relevant work included cleaner, certified medical assistant, and short order/fast food cook. (Tr. 57.) The VE testified that a hypothetical person with Bland's age, education and work history who was capable of work at all exertional level limited to simple, routine tasks, making simple work related decisions with no production paced tasks that require strict hourly goals and occasional contact with supervisors and coworkers, but brief incidental contact with the general public and off task 5% of the workday in a non-hazardous work environment would be able to perform Bland's past relevant work of cleaner. (Tr. 58.) The VE also testified that the hypothetical person would also be able to perform jobs as a laundry worker II and cleaner I. (Tr. 58-59.) If the hypothetical person was limited to occasional contact with supervisors, brief, incidental contact with co-workers and no contact with the public, then the same jobs would be available. (Tr. 59.) If the person was off task 10% of the work day, then the positions could still be available. (Tr. 59.) If the person was off task 15% of the work day, then the positions would not be available. (Tr. 60.) The VE testified that a marked limitation in the ability to adapt to workplace changes or routines would eliminate all positions for all occupations regardless of contact with supervisors, co-workers, or the public. (Tr. 60.)

## VI. Discussion

Bland states that the ALJ erred because the ALJ did not apply the appropriate weight to Carol Greening's opinion. Bland also states that the ALJ's RFC determination was not supported by substantial evidence.

### A. Carol Greening's Opinion

The ALJ gave Greening's opinion limited weight, because she found Greening's opinion was unsupported by contemporaneous treatment notes, Bland's activities of daily living and social relationships, and Bland's normal mental status findings in consideration of the record as a whole.

> Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources*. It then divides *other sources* into two groups: *medical sources* and *non-medical sources*. *Acceptable medical sources* include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources,

*Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted). Medical sources include "nurse practitioners, physician assistants, naturopaths, chiropractors, audiologists, and therapists." 20 C.F.R. § 404.913(d)[2]. "Information from these

---

[2] Several significant revisions of Social Security regulations and reports became effective recently. The Social Security Report regarding evaluation of symptoms in social security disability claims was effective on March 28, 2016 and republished on October 25, 2017. *See* SSR 16-3P, 2017 WL 5180304, Social Security Ruling 16-3p, Policy Interpretation Ruling Title II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of Individual Statements (October 25, 2017). Also, many Social Security regulations were amended

other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose." SSR 06-03P, 2006 WL 2329939 at *2. The parties do not dispute the existence or type of Bland's medically determinable impairments.

"[I]nformation from such other sources, [however], may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* "Evidence provided by 'other sources' must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record." *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015); *see also Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (in determining what weight to give to other evidence, the ALJ has more discretion and is permitted to consider any inconsistencies found within the record). Therefore, the ALJ is required to consider Greening's opinion in evaluating Bland's impairments.

Bland asserts that the ALJ erred in assessing little weight to Greening's opinion, because it was supported by the record as a whole, including two independent psychologists' opinions. The ALJ discounted Bland's opinion because she noted that Bland had not required hospitalization and her mental impairments were maintained with appointments every few months. The ALJ also stated that Bland lived independently with her daughter and attended to self-care and household chores. The ALJ noted that Bland's panic attacks decreased substantially from 2015 to 2017. She also noted that Greening's treatment notes did not support

---

effective March 27, 2017. Per 20 C.F.R. §§ 416.325, 416.927, the Social Security Administration uses the regulations in effect at the time that this claim was filed. SSR 16-3p states "our adjudicators will apply SSR 16-3p when we make determinations and decisions on or after March 28, 2016. When a Federal court reviews our final decision in a claim, we also explain that we expect the court to review the final decision using the rules that were in effect at the time we issued the decision under review." SSR 16-3p at 1. Bland's application was filed in 2015.

13

her assessment that Bland was extremely or markedly limited in the ability to adapt and manage herself.  She also found that the assessment Bland would have excessive absenteeism was not supported in the record, as Greening's treatment notes showed that she presented to her appointments as scheduled and there were no late arrivals or no shows.

Based on a review of the record as a whole, the Court finds that the ALJ's assessment of Greening's medical source statement is not supported by substantial evidence in the record as a whole.  Greening treated Bland for several years and had a longitudinal view of her treatment history, including medication changes.  The ALJ's primary reason for rejecting Greening's assessment is lack of consistency with the record.  Greening's assessment is supported by Bland's work history, her activities of daily living, Bland's presentation at her treatment appointments, Dr. Spencer's consultative examination, and Dr. Bucklew's assessment.  Greening, Dr. Spencer, and Dr. Bucklew all found that Bland was extremely or markedly limited in her ability to interact socially.  (Tr. 71-72, 356, 360.)  Greening and Dr. Spencer found that Bland was markedly or extremely limited in her ability to adapt to the environment (Tr. 356, 360.)  Dr. Bucklew's written notes state Bland "is not able to adapt to changes or tolerate even limited social interaction."  (Tr. 69.)  He noted that she had marked limitations in the ability to work in coordination with or in proximity to others without being distracted by them and getting along with coworkers or peers without distracting them or exhibiting behavioral norms."  (Tr. 72.)[3]  It is very relevant that Bland's treating provider, a consultative examiner, and the state agency psychologist found the same significant limitations.

---

[3] The ALJ notes that Bucklew found Bland not disabled, which was contradicted by the note regarding her inability to adapt to changes or tolerate social interaction.  A close reading of Dr. Bucklew's opinion notes that he found her not disabled, because duration had not been met on the date he wrote the opinion.  He wrote, "Duration has not been met, but AOD for current severity which has increased is 5-19-15, so duration is expected."

14

Bland's work history indicates that she left her last two jobs due the effects of her symptoms and impairments on her social interactions with others. (Tr. 45-46.) Bland's activities of daily living also support Greening's assessment. Bland does not go out publicly often, except to the grocery store. (Tr. 44-45.) She also selected the store for shopping based on the size of the store and sometimes her mother had to pay for the groceries, because she had to leave. (Tr. 44-45.) With the exception of one visit, Bland presented at all of the treatment appointments with Greening in a tearful mood, consistent with her testimony about crying spells during work. (Tr. 276-306, 347-51, 359-61, 400-23, 463-92.) There is a consistent record of anxiety, depression, social isolation, and a history of impairments affecting work abilities.

The ALJ mentions that Bland is able to personally care for herself, live alone with her daughter, and cook. To determine whether a claimant has the residual functional capacity necessary to be able to work the Court looks to whether he has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004) (citing *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)). The Eighth Circuit has repeatedly held that "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998). Further, "a person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Kelley v. Callahan*, 133 F.3d 583, 588-89 (8th Cir. 1998). Therefore, Bland limited activities do not support discounting Greening's medical source statement.

The ALJ also mentions Greening's opinion is entitled to little weight, because Bland's symptoms have decreased, notably the number of panic attacks. It is possible for a person's health to improve, and for the person to remain too disabled to work." *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003). "[D]oing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity." *Hutshell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). *See e.g., Gude v. Sullivan*, 956 F.2d 791, 794 (8th Cir. 1992) (claimant doing well for someone with systemic lupus erythematosus and it does not contradict doctor's opinion on her inability to work). "It is inherent in psychotic illnesses that periods of remission will occur, and that such remission does not mean that the disability has ceased. Indeed, one characteristic of mental illness is the presence of occasional symptom-free periods." *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) (internal citations omitted). "Although the mere existence of symptom-free periods may negate a finding of disability when a physical ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of a claim." *Id.* Also, the ALJ did not consider how Bland's structured and homebound lifestyle affects the severity of her symptoms. *See* 20 C.F.R. Part 401, Subpt. P, App. 1, 12.00(F) (in cases involving chronic mental disorder, overt symptomatology may be controlled or attenuated by psychosocial factors such as highly structured and supportive settings that may greatly reduce the mental demands on the claimant. With lowered mental demands, overt symptoms and signs of the underlying mental disorder may be minimized, but the ability to function outside of a structured or supportive setting may not have changed).

Finally, the ALJ mentioned that Greening's opinion should be discounted because Bland was never hospitalized or needed emergency treatment. A claimant is not required to be

16

hospitalized to be found disabled. *See Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (well settled law that a claimant need not be bedridden or helpless to be found disabled). Based on the foregoing, the ALJ's assessment of Greening's medical source statement is not supported by substantial evidence.

### B. RFC Determination

Bland also claims that the ALJ's RFC determination is not supported by substantial evidence. Because the Court has found that the ALJ's evaluation of the evidence used to support the RFC is not supported by substantial evidence, the Court is remanding this action to the ALJ for a reconsideration of Bland's treating provider's medical source statement and other opinion evidence in the record. Then, the ALJ must prepare a new RFC determination.

### VII. Conclusion

Based on the foregoing, the Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings). The Commissioner is urged to begin proceedings without delay and resolve this case as soon as possible.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Bland seeks in her Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part**. [Docs. 1, 20.]

**IT IS FURTHER ORDERED** that the ALJ's decision of April 3, 2018 is **REVERSED** and **REMANDED**.

**IT IS FURTHER ORDERED** that the ALJ shall re-evaluate Bland's residual functional capacity after giving appropriate weight to the opinions of Bland's treating mental health provider, the consultative examiner, and the stage agency psychologist.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Andrew M. Saul for Nancy A. Berryhill in the court record of this case.

                                          NANNETTE A. BAKER
                                          UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of April, 2020.